IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

VINCENT D. TUGGLES,            )
                               )
            Plaintiff,         )
                               )
      v.                       )      1:18CV97
                               )
                               )
UNITED STATES OF AMERICA,      )
                               )
            Defendant.         )

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Before the Court is Defendant's Motion for Summary Judgment, related to Plaintiff's sole remaining claim, assault and battery.[1] (ECF No. 37). Plaintiff's claim arises from an incident in which Plaintiff was allegedly thrown to the ground and beaten by law enforcement officers of Durham, North Carolina's Veteran Affairs Medical Center. (ECF Nos. 1 ¶ 3; 40 at 17.) For the reasons set forth below, Defendant's motion will be denied.

**I.    BACKGROUND**

Plaintiff, Vincent D. Tuggles, is an honorably discharged veteran of the United States Army and is eligible to receive medical care at facilities operated by the United States Department of Veterans Affairs ("VA"). (ECF No. 1 ¶ 18.) Plaintiff is totally disabled and receives VA and Social Security disability benefits. (ECF No. 38-2 at 12, 14.) Prior to the

---

[1] The Court previously dismissed Plaintiff's false arrest, false imprisonment, negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, and *Bivens* claims. (*See* ECF No. 28 at 20–21.)

1

incident in question, Plaintiff suffered from a "chronic lumbosacral strain," an "unspecified depressive disorder associated with chronic lumbosacral strain," and a left shoulder injury. (ECF No. 38-6 at 1.) In addition to chronic back and shoulder pain, Plaintiff suffered from chronic headaches and a possible pinched nerve. (ECF No. 38-2 at 20, 35.)

On the night of Sunday, November 16, 2014, Plaintiff borrowed some cash from his daughter and her husband to drive to his VA appointment the following morning. (*Id.* at 34–35.) Plaintiff and his wife ("Mrs. Tuggles") arose early on November 17, drove to the VAMC, and "reported to the orthopedic department" for Plaintiff's appointment. (*Id.* at 35–36.)

After his appointment, Plaintiff went to the VA's travel pay station to request a cash voucher so that he could buy gas for his drive home. (*Id.* at 37–38.) The receptionist at the travel pay station directed Plaintiff to the travel pay administrator's office to ask for his cash voucher. (*Id.* at 38.) What next occurred while Plaintiff was in the administrator's office is subject to dispute.

### A. Plaintiff's Account

#### *(1) Administrator's Office*

According to Plaintiff, he then knocked on the door of the administrator, Rachel Faulding ("Faulding"), who invited him in and inquired as to why he was there. (*Id.* at 39; ECF No. 38-4 at 10–11.) Plaintiff introduced himself and explained that he had been instructed to ask Faulding for a cash voucher. (ECF No. 38-2 at 39.) Faulding then asked Plaintiff what he was doing in her office for a second and third time. (*Id.* at 39–40.) Plaintiff felt "astonished" to be asked the same question three times and responded with words to the effect of: "Oh Miss, do you think I'm lying? I have no reason to lie to you." (*Id.* at 40.) Plaintiff

2

admits that he was speaking at a "little above average" and "raised" volume at the time, but states that he was not yelling. (*Id.* at 46–47.) At this point, Mrs. Tuggles stuck her head into Faulding's office to ask what was going on. (ECF No. 38-3 at 16.) Plaintiff informed his wife that Faulding thought he was lying about not having any money. (*Id.*)

Suddenly, several[2] federal law enforcement officers came to the door of Faulding's office and said, "Sir, out of the office, please."[3] (*See* ECF No. 38-2 at 47.) Plaintiff responded: "Oh, me? Why me? Maybe [Faulding] should be the one that you ask out of the office because she's asked me the same question three times." (ECF No. 38-2 at 51.) Plaintiff then stood up to leave and reached for his wallet. (*Id.*; ECF No. 38-3 at 16.) But before Plaintiff could walk out of the office, an officer grabbed him by the right arm, pulled him into the hallway, and announced that he was under arrest for causing a disturbance. (*See* ECF No. 38-2 at 51–52.)

*(2) Assault and Battery*

Once in the hallway, Plaintiff continued to ask the officers why they were "telling him to come out [when they] should be in there asking [Faulding] what was going on." (ECF No. 38-3 at 19.) The officers then, according to Plaintiff, "pounded" Plaintiff into the floor facedown and began "hurting" him by kicking him in the kidneys, putting their knees to his neck, and "bending [his] right arm all the way back to the point that it snapped." (ECF No. 38-2 at 53–54.) Furthermore, both Plaintiff and Mrs. Tuggles have sworn in affidavits that

---

[2] It is unclear how many officers were involved in this incident, though "at least three" seem to have reported to Faulding's office. (*See, e.g.,* ECF Nos. 1-1 at 1; 38 at 5–6 & n.6; 38-2 at 47.)

[3] As explained below, the officers were summoned by Faulding who had pressed a panic button in her office. (*See* ECF No. 38-4 at 20.)

3

the officers "beat [Plaintiff] about [his] head, neck, shoulders, back, and kidneys."[4] (*See* ECF Nos. 18-1 ¶ 9; 18-2 ¶ 9.) The officers then handcuffed Plaintiff. (ECF No. 38-2 at 55.) While on the ground, Plaintiff screamed "I'm dying. I'm dying," and asked why he was being arrested. (*See* ECF Nos. 38-2 at 53; 38-3 at 22.) Mrs. Tuggles states that during this time, Plaintiff "wasn't fighting or nothing like that" and was not resisting being handcuffed. (ECF No. 38-3 at 22.)

After handcuffing Plaintiff, the officers stood him up and advised him of his rights. (ECF No. 38-2 at 55.) The officers then walked Plaintiff down the hall to a police holding area where he remained for "about an hour." (ECF No. 38-2 at 66, 68.) While in the holding area, Plaintiff received a violation for "disorderly conduct [and] creating a disturbance in the facility," in violation of 38 C.F.R. 1.218(b)(11). (*See* ECF No. 38-2 at 69, 114.) Plaintiff was then "taken to the [VAMC's] Emergency Department for observation." (ECF No. 1 ¶ 28.) Plaintiff states he did not want medical care from the VA's ER because the VA had "just tried to kill [him]." (ECF No. 38-2 at 72, 81.) Plaintiff eventually returned home, "took some medications and tried to go to sleep," but could not. (*Id.* at 86.)

---

[4] Plaintiff and his wife submitted these affidavits in response to Defendant's Motion to Dismiss. (*See* ECF Nos. 18; 18-1; 18-2.) However, Plaintiff has not produced any evidence at the summary judgment stage supporting his allegation that he was beaten by the officers. Nor did Plaintiff cite to these affidavits in opposing Defendant's instant motion. Generally, to avoid summary judgment, a nonmovant must cite to "particular parts of materials in the record" establishing a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(c)(1). However, Federal Rule of Civil Procedure 56(c)(3) explicitly permits courts to "consider other materials in the record" not cited by the parties. Fed. R. Civ. P. 56(c)(3); *see also, e.g.*, *Gemini Ins. Co. v. Earth Treks, Inc.*, 728 F. App'x 182, 185 (4th Cir. 2018); *Blake v. Wells Fargo Bank, N.A.*, No. 1:18CV790, 2020 WL 406358, at *7 (M.D.N.C. Jan. 24, 2020). District courts are therefore "free to consider evidence submitted in response to one motion when [they] decide [another]." *Torry v. City of Chi.*, 932 F.3d 579, 584 (7th Cir. 2019). As affidavits are admissible evidence on a motion for summary judgment, Fed. R. Civ. P. 56(c)(1)(A), and as Defendant had ample notice that Plaintiff alleged he was beaten, the Court will exercise its discretion to consider these affidavits. To do otherwise may result in an injustice.

The next day, November 18, Plaintiff went to UNC Health Care's Rex Emergency Room in Raleigh. (ECF Nos. 38-2 at 88; 38-7 at 1.) At the emergency room, Plaintiff complained of neck, hip, shoulder, and head pain. (ECF No. 38-7 at 1.) According to physician notes, Plaintiff was "ambulatory without obvious signs of distress." (*Id.*) Plaintiff was prescribed Percocet, a pain killer, and instructed to take it as needed for the next ten days. (*Id.* at 4.) Plaintiff was never summoned to court for his alleged disorderly conduct, never paid a fine, and was not prosecuted for the incident in any way. (*See* ECF Nos. 38 at 19; 38-2 at 70.)

**B. Defendant's Account**

In her deposition, VA administrator Faulding testified that her encounter with Plaintiff was the most frightening experience of her twelve years working at the VA and was the only time she ever pushed the panic button in her office. (ECF No. 38-4 at 13.) According to Faulding, Plaintiff entered her office, declined her request to sit down, and began pacing. (*Id.* at 14.) Faulding then informed Plaintiff that she needed a moment to "get into [her] computer" so she that could help him, at which point "things just went awry." (*Id.* at 14, 21.) Plaintiff "flung" his VA ID card onto her desk and turned out his pockets saying, "I don't have any money." (*See id.* at 14, 20–21.) While Plaintiff was "pacing back and forth" and "ranting" about wanting his travel voucher, Faulding activated her panic alarm. (*Id.* at 20.) A uniformed officer then appeared who asked Plaintiff three times to leave the office. (*Id.* at 20–21.) After the third request, Plaintiff "stepped out of the office" and Faulding lost sight of him. (*Id.* at 21, 25.)

5

Defendant offers no competing evidence as to what occurred next once Plaintiff and the officers were in the hallway outside Faulding's office.[5]  However, Defendant has produced evidence in the form of physician notes describing Plaintiff's time at the VAMC's ER on November 17.  The notes describe Plaintiff's "chief complaint / reason for visit" as "anger." (ECF No. 8 at 5.)  In addition, one of Plaintiff's treating physicians, after speaking with the VA law enforcement officers as well as nurses and doctors in the ER about the incident, recorded the following note:

> [Plaintiff] says that the employee working in the travel office was dismissive and 'disrespectful,' ignoring him.  [Plaintiff] became verbally agitated toward her . . . employee triggered silent alarm, summoning police . . . when police arrived, [Plaintiff] threw his VA ID at the travel office employee and slammed hand on table.  Did not respond to police redirection and required physical take-down in the hallway outside of travel office.

(*Id.* at 10.)

Defendant moves for summary judgement, arguing that Plaintiff's assault and battery claim fails as a matter of law because the officers' use of force was not excessive. (*See, e.g.*, ECF No. 38 at 22.)

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is "genuine" if the evidence would permit a reasonable jury to find for the nonmoving party, and "[a] fact is material if it might affect the outcome" of the litigation. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568 (4th Cir. 2015).  The role

---

[5] The only officer present at the scene who was deposed or otherwise provided evidence as to Defendant's perspective on the encounter does not recall the incident at all. (ECF No. 41 at 15, 40.)

of the court is not "to weigh the evidence and determine the truth of the matter," but rather "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). When reviewing a motion for summary judgment, the court must "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the nonmoving party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)).

## III. DISCUSSION

Defendant contends as its basis for summary judgment that no reasonable jury could find that the VA officers used excessive force against Plaintiff and thus that it is entitled to judgment as a matter of law on Plaintiff's assault and battery claim. (*See* ECF No. 42 at 1.) Plaintiff counters that a genuine dispute exists as to the reasonableness of the officer's conduct that precludes summary judgment. (ECF No. 40 at 17.)

Under North Carolina law,[6] "[a]n assault is an offer to show violence to another without striking him, and a battery is the carrying of the threat into effect by the infliction of a blow." *Dickens v. Puryear*, 276 S.E.2d 325, 330 (N.C. 1981). To prove a claim of assault and battery against a law enforcement officer, however, a plaintiff must "show that the officer used force against plaintiff which was excessive under the given circumstances." *Glenn-Robinson v. Acker*, 538 S.E.2d 601, 615 (N.C. Ct. App. 2000) (citation omitted). "Excessive force claims

---

[6] Plaintiff brought his claim under the Federal Torts Claims Act, which allows suits against the United States "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission [of a federal employee acting within the scope of their employment] occurred." 28 U.S.C. §1346(b)(1). Defendant is therefore liable for assault and battery only if the officers in question would be so liable under North Carolina law.

7

against law enforcement officials are analyzed under the Fourth Amendment's 'objective reasonableness' standard." *White v. Town of Chapel Hill*, 899 F. Supp. 1428, 1435, 1437 (M.D.N.C. 1995) (quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989)) (applying Fourth Amendment excessive force jurisprudence to plaintiff's North Carolina assault and battery claim against law enforcement officers), *aff'd* 70 F.3d 1264 (4th Cir. 1995).

In applying this standard of objective reasonableness to determine if an officer has used excessive force, courts consider the three factors set forth in *Graham v. Connor*: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Wilson v. Prince George's Cty.*, 893 F.3d 213, 219–20 (4th Cir. 2018) (quoting *Graham*, 490 U.S. at 396). In addition to the *Graham* factors, courts also consider "[t]he extent of the plaintiff's injury" when determining if an officer has used excessive force. *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003). In considering these factors, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Ultimately, the Court "must decide 'whether the totality of the circumstances justified a particular sort of seizure.'" *Hupp v. Cook*, 931 F.3d 307, 322 (4th Cir. 2019) (quoting *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015)). Here, in light of the three *Graham* factors, the severity of the Plaintiff's injuries, and the totality of the circumstances, the Court concludes that a genuine issue of material fact exists as to the reasonableness of the officers' actions.

Regarding the first *Graham* factor, the severity of the crime at issue, Plaintiff was suspected of the misdemeanor of creating a disturbance within a VA facility in violation of 38

8

Case 1:18-cv-00097-LCB-LPA   Document 45   Filed 06/06/20   Page 8 of 12

C.F.R. 1.218(b)(11). (*See* ECF Nos. 38-2 at 114.) Had Defendant elected to pursue this charge against Plaintiff, and had Plaintiff been convicted, Plaintiff could have faced a sentence of not more than six months imprisonment and a fine of up to $250. *See* 38 C.F.R. 1.218(b)(11). As the Fourth Circuit recently explained, such misdemeanors are "minor" crimes of "slight" severity. *Hupp*, 931 F.3d at 322. Accordingly, the first *Graham* factor weighs in Plaintiff's favor. *See id.*

Application of the second *Graham* factor, whether the suspect posed an immediate threat to the safety of the officers or others, is similarly straightforward. Here, there is no evidence that the VA officers felt threatened by Plaintiff, believed him to be armed, or believed him to be a danger to himself or others at the time he was brought to the ground in the hallway. While Faulding testified that she summoned the officers because she was afraid of Plaintiff, (*see* ECF No. 38-4 at 13), this fear of Plaintiff when she was alone with him in her office is only marginally relevant to the question of whether Plaintiff posed an *immediate* threat to the safety of the officers or others once Plaintiff was pulled from her office into the hallway where there were several officers, *see, e.g.*, *Harris v. Pittman*, 927 F.3d 266, 281 (4th Cir. 2019) (reiterating the Fourth Circuit's longstanding rule that force initially justified by a serious threat to the safety of an officer is no longer justified "when the circumstances change so as to eliminate the threat"); *Waterman v. Batton*, 393 F.3d 471, 481 (4th Cir. 2005) ("[F]orce justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated."); *see also Maney v. Garrison*, 681 F. App'x 210, 233 (4th Cir. 2017) (Harris, J. dissenting) ("[P]olice officers are charged with applying Fourth Amendment use-of-force restrictions on a second-by-second basis, and responding immediately to changed

9

circumstances or new information."). Nor could the officers reasonably conclude that Plaintiff's raised tone of voice posed a threat to their safety. *See Jones*, 325 F.3d at 530 (holding that "screaming" and "foul language" in the presence of a police officer was a "'nuisance' and not an immediate threat to the safety of . . . officers or others under *Graham*"). In short, Defendant has failed to demonstrate that Plaintiff was a threat to anyone at the time the force was used. As the second *Graham* factor "is undoubtedly the 'most important' [factor] in determining the objective reasonableness of an officer's use of force," *Pauly v. White*, 874 F.3d 1197, 1215–16 (10th Cir. 2017) (quoting *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010)), this failure weighs heavily in Plaintiff's favor and against Defendant's contention that the force used was reasonable as a matter of law.

The third and final *Graham* factor also favors Plaintiff. This factor asks whether the suspect was actively resisting arrest or attempting to evade arrest by flight at the time of the challenged use of force. Defendant does not contend Plaintiff attempted to flee. The government does, however, insist that "Plaintiff was actively resisting his arrest," and that the officers "had to take Plaintiff to the ground" because of this resistance. (*See* ECF No. 42 at 6, 11.) Though Defendant argues this contention, it fails to offer any testimony from the several officers involved to support active resistance by Plaintiff. Rather, the only support in the record for this proposition comes from a note made by a physician in the ER that others had informed him that Plaintiff "[d]id not respond to police redirection and required physical takedown in the hallway outside of travel office." (ECF No. 8 at 10.) Though it is not clear that Defendant could present this evidence in an admissible form at trial, the Court need not consider its admissibility at this stage because Mrs. Tuggles has explicitly testified that her

10

husband did not resist arrest.  (*See* ECF No. 38-3 at 22.)  Thus, viewing the evidence in the light most favorable to Plaintiff, as this Court is required to do, and drawing all inferences in Plaintiff's favor, the third *Graham* factor also weighs in favor of Plaintiff and against Defendant's contention that the officers behaved in an objectively reasonable manner.

As discussed above, in addition to the *Graham* factors, which this Court concludes weigh heavily in favor of Plaintiff, courts also consider "[t]he extent of the plaintiff's injury" when determining if an officer has used excessive force. *Jones*, 325 F.3d at 527.  The evidence presented by Defendant shows that Plaintiff's chief complaint when he visited the VAMC's ER was "anger," and that his treating physicians at the Rex emergency room only prescribed him a short-term pain killer for his injuries.  This suggests a lack of serious or long-term injury, which could support that the officers' force was not excessive.  *See Hupp*, 931 F.3d at 322. Plaintiff has, however, testified that he suffered long-term physical harm as a result of the officers pounding him into the ground, kicking him in the kidneys, putting their knees to his neck, and bending his right arm all the way back until it snapped.  (*See* ECF No. 38-2 at 53–54, 75, 93.)  The Court therefore concludes that a jury question exists as to the nature and severity of Plaintiff's injuries.[7]

---

[7] Even if the Court found that Plaintiff suffered no injuries at all, this finding alone could not justify summary judgment because a plaintiff need not suffer more than de minimis injury to recover for a Fourth Amendment excessive force claim.  *See Hupp*, 931 F.3d at 322 (finding that plaintiff's "minor injuries" were "but one consideration in determining whether force was excessive"); *Smith v. Murphy*, 634 F. App'x 914, 917 (4th Cir. 2015) (explaining that the Fourth Amendment does not "absolve police officers of liability so long as their conduct, however unreasonable, only results in de minimis injuries").

11

In sum, after considering the totality of the circumstances surrounding the incident, the *Graham* factors which weigh decidedly in Plaintiff's favor, and the questions of fact concerning the nature and severity of Plaintiff's injuries and whether the force used by the officers was indeed excessive, the Court cannot conclude that the officers' behavior was reasonable as a matter of law.[8]  Defendant has therefore failed to carry its burden of showing an absence of triable issues and that it is entitled to judgment as a matter of law.

The Court therefore enters the following:

## ORDER

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment, (ECF No. 37), is DENIED.

This, the 6th day of June 2020.

/s/Loretta C. Biggs
United States District Judge

---

[8] Nor can the Court conclude, as Defendant appears to argue, that the officers' use of force, even if unreasonable, was de minimis as a matter of law.  (*See* ECF No. 42 at 8–9.)